**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ANGELITA KILBURN and | : | | |
| STEVEN TIMOTHY KILBURN, | : | | |
| as Co-Executors of the Estate of | : | | |
| PETER KILBURN, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 01-1301 (RMU) |
| | : | | |
| v. | : | Document No.: | 102 |
| | : | | |
| THE ISLAMIC REPUBLIC OF IRAN | : | | |
| *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING THE PLAINTIFFS' EXPEDITED MOTION TO DISMISS**
**THE CLAIMS AGAINST THE LIBYAN DEFENDANTS**

## I.  INTRODUCTION

This matter is before the court on the plaintiffs' motion to dismiss with prejudice all claims against the Socialist People's Libyan Arab Jamahiriya ("Libya") and the Libyan External Security Organization ("LESO").  The plaintiffs are the executors of the Estate of Peter Kilburn, who was kidnapped and subsequently killed in Lebanon.  The plaintiffs seek to resolve their claims against Libya and LESO by fulfilling the terms of a Claims Settlement Agreement signed between the United States and Libya, pursuant to the Libyan Claims Resolution Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008).  Because Libya and LESO have not demonstrated that they would suffer any prejudice if the claims against them were dismissed, the court grants the plaintiffs' motion to dismiss.

## II.  FACTUAL & PROCEDURAL BACKGROUND

According to the plaintiffs, this case arises from the November 1984 kidnapping of Peter Kilburn from his apartment in Beirut, Lebanon.  Compl. at 6.  The plaintiffs allege that Hizbollah claimed responsibility for the kidnapping and held Kilburn captive until April 1986.  *Id.* at 7.  The plaintiffs further allege that Hizbollah then sold Kilburn to the Arab Revolutionary Cells, who claimed that they murdered Kilburn in retaliation for the U.S. bombing of Tripoli, Libya.  *Id.*

On June 12, 2001, the plaintiffs, as the executors of Kilburn's estate, filed their complaint in this court seeking recovery for wrongful death, battery, assault, false imprisonment, slave trafficking, intentional infliction of emotional distress, loss of solatium and economic damages against Libya, LESO, the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS").  *Id.* at 10-19.  In addition, the plaintiffs requested punitive damages against MOIS and LESO.  *Id.* at 16-20.  The plaintiffs claim that Iran and MOIS provided material support to Hizbollah for their activities, including the kidnapping and torture of Kilburn.  *Id.* at 3-4.  Additionally, the plaintiffs claim that Libya and LESO provided material support to the Arab Revolutionary Cells for their terrorist activities, including the purchase and extrajudicial killing of Kilburn.  *Id.* at 4-5.  Libya and LESO filed an answer on November 11, 2001.  *See generally* Libyan Defs.' Answer.  The Clerk of the Court entered default as to Iran and MOIS in March 2005, for failure to plead or otherwise defend this action.  Clerk's Entry of Default (March 2, 2005).

On August 4, 2008, President Bush signed the Libyan Claims Resolution Act ("Act") with the aim of creating a fund to benefit those harmed by Libya's engagement in terrorist activities.  Libyan Claims Res. Act, Pub. L. No. 110-301, 122 Stat. 2999 (2008).  The Act's

purpose is to provide "fair compensation to all nationals of the United States who have terrorism-related claims against Libya through a comprehensive settlement of claims . . . pursuant to an international agreement between the United States and Libya as part of the process of restoring normal relations between Libya and the United States." *Id.* § 3.  In accordance with the Act, the United States and Libya entered into a binding Claims Settlement Agreement ("Agreement") that seeks to

> (1) reach a final settlement of the Parties' claims, and those of their nationals (including natural and juridical persons); (2) terminate permanently all pending suits (including suits with judgments that are still subject to appeal or other forms of direct judicial review); and (3) preclude any future suits that may be taken to their courts . . . [if] such claim or suit arises from personal injury, . . . death, or property loss caused by . . . an act of torture . . . or other terrorist act, or the provision of material support or resources [prior to June 30, 2006].

U.S. Statement of Interest, Ex. 1 (Agreement) at Art. I.  The Agreement further stipulates that the United States shall aid in securing the termination of these suits, *id.* at Art. III, upon receipt of a pre-determined amount ("the Fund") from Libya that will provide settlement compensation to United States nationals who have claims as described by the Act, U.S. Statement of Interest, Ex. 2 ("Certification of funds") at 2.  On October 31, 2008, Secretary of State Condoleeza Rice certified that the United States was in full receipt of the funds.  *Id.* at 1.

In light of these events, the plaintiffs filed an expedited motion to dismiss the claims against Libya and LESO (but not Iran or MOIS) in order to seek compensation from the Fund under the terms of the Agreement.  Pls.' Mot. to Dismiss at 2.  Libya and LESO question whether the Agreement allows anything less than the dismissal of the case in its entirety, including the dismissal of the claims against Iran and MOIS.  Libyan Defs.' Statement Regarding Pls.' Mot. to Dismiss.  The United States filed a statement of interest supporting dismissal of

claims with prejudice against only Libya and LESO.  U.S. Statement of Interest at 15.  The court turns now to the plaintiffs' motion.

## III.  ANALYSIS

### A.  Legal Standard for Voluntary Dismissal under Rule 41

Federal Rule of Civil Procedure 41(a) governs voluntary dismissal of an action.  Under Rule 41(a)(2), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."  FED. R. CIV. P. 41(a)(2); *Taragan v. Eli Lilly & Co.*, 838 F.2d 1337, 1339 (D.C. Cir. 1988).  Dismissals under Rule 41(a)(2) "generally [are] granted in the federal courts unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage."  *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986); *see also* 9 FED. PRAC. & PROC. 3d § 2364.  Dismissals with prejudice result in a complete adjudication of the claims and serve as a bar to future actions.  It has been held that the district court has no discretion in this situation and cannot force an unwilling plaintiff to go to trial.  *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964); *see also* 9 FED. PRAC. & PROC. 3d § 2367.  Other courts have disagreed, holding that courts always have discretion, particularly when dismissal will not determine the suit between all parties involved.  *Routed Thru-Pac, Inc. v. United States*, 401 F.2d 789, 795-96 (Ct. Cl. 1968); *see also* 9 FED. PRAC. & PROC. 3d § 2364.

### B.  The Court Grants the Plaintiffs' Motion to Dismiss

The plaintiffs propose dismissal with prejudice of all claims against Libya and LESO and assert that this action will fulfill the terms of the Agreement, thereby allowing for compensation from the Fund.  Pls.' Mot. to Dismiss at 2.  Libya and LESO respond with uncertainty about

whether such dismissal comports with the terms of the Agreement, or whether dismissal against all the defendants, including Iran and MOIS, is required.  Libyan Defs.' Statement Regarding Pls.' Mot. to Dismiss at 1.

In its statement of interest, the United States asserts that this court no longer has jurisdiction to adjudicate the plaintiffs' claims against Libya and LESO, U.S. Statement of Interest at 7, but that the plaintiffs can proceed against Iran and MOIS, *id.* at 14 (citing Libyan Claims Res. Act § 5(a)(1)(A), Pub. L. No. 110-301, 122 Stat. 2999, 3000 (2008)).  Notably, Libya and LESO did not file an opposition to the plaintiffs' motion to dismiss nor did they file any response or opposition to the United States' statement of interest.  The only document filed by Libya and LESO on this issue is a two page "Statement Regarding Plaintiffs' Motion to Dismiss Certain Defendants."  *See generally* Libyan Defs.' Statement Regarding Pls.' Mot. to Dismiss.  In that statement, Libya and LESO offer no factual or legal argument on the issue of dismissal noting only that "[t]here is a question as to whether an order dismissing anything less than this action in its entirety comports with the [Agreement]" and that "the dismissal of pending United States actions against [Libya and LESO] is the responsibility of the United States government."  Libyan Defs.' Statement Regarding Pls.' Mot. to Dismiss at 1.  Nowhere do Libya and LESO claim, or even imply, that they will suffer prejudice if the claims against Iran and MOIS are not dismissed as well.  *See Conafey*, 793 F.2d at 353 (holding that dismissals under Rule 41(a)(2) "generally [are] granted . . . unless the defendant would suffer prejudice").  Not only have Libya and LESO not alleged any prejudice, they agree that the United States has the responsibility to dismiss pending lawsuits under the Agreement, Libyan Defs.' Statement Regarding Pls.' Mot. to Dismiss at 1, and have not contested the United States' conclusion that dismissal of Libya and LESO is proper.  Concluding, therefore, that Libya and LESO will not be

prejudiced by dismissal of the claims against them, the court grants the plaintiffs' motion to dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to dismiss with prejudice the claims against Libya and LESO only.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of February 2009.

RICARDO M. URBINA
United States District Judge