UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELITA KILBURN and<br>  STEPHEN TIMOTHY KILBURN as<br>  Co-Executors of the Estates of PETER<br>  C. KILBURN, deceased, and BLAKE<br>  KILBURN, deceased,<br>  7325 West Evans Creek Road<br>  Rogue River, Oregon 97537<br><br>   Plaintiffs<br><br>  v.<br><br>THE ISLAMIC REPUBLIC OF IRAN<br>Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street<br>Tehran, Iran<br><br>THE IRANIAN MINISTRY OF<br>INFORMATION AND SECURITY<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran<br><br>SOCIALIST PEOPLE'S LIBYAN<br>ARAB JAMAHIRIYA<br>Ministry of Foreign Affairs<br>Tripoli, Libya<br><br>and<br><br>LIBYAN EXTERNAL SECURITY<br>ORGANIZATION, a/k/a Jamahiriya<br>  Security Organization<br>Ministry of Foreign Affairs<br>Tripoli, Libya<br><br>   Defendants. | Civil Action No. 01-1301-RMU<br><br>**FIRST AMENDED COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT AS AMENDED** |

1

# INTRODUCTION

Plaintiffs, by and through their undersigned counsel, bring this action seeking damages arising out of the events including kidnapping, subsequent captivity, sale, and extrajudicial killing of Peter C. Kilburn in Lebanon, that began on or about November 30, 1984 and ended with Mr. Kilburn's murder on or about April 17, 1986. Plaintiffs seek judgment against Defendants, the Islamic Republic of Iran ("Iran"), the Iranian Ministry of Information and Security ("MOIS"), the Socialist People's Libyan Arab Jamahiriya ("Libya"), and the Libyan External Security Organization ("LESO"), jointly and severally. In support of their Complaint Plaintiffs aver as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction over the subject matter of this case arises from 28 U.S.C. § 1330(a). Defendants, the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605A, and related statutes.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

## THE PARTIES

3.     Angelita Kilburn and Stephen Timothy Kilburn are the widow and son, respectively, of Blake Kilburn, deceased. Angelita Kilburn and Stephen Timothy Kilburn also are the Co-Executors of the Estate of Blake Kilburn, who had been the Executor of the Estate of Peter Kilburn. Peter Kilburn was Blake's older brother. Due to Blake Kilburn's death in January 2006, Angelita Kilburn and Stephen Timothy Kilburn have been substituted as Plaintiffs in this action to represent the interests of the Estates of Blake Kilburn and Peter C. Kilburn. The

Court ordered such substitution in open court at a proceeding on September 21, 2006. *See* Docket Entry 88, attachment 1 at 4.

4.  Peter Kilburn was a citizen of the United States. He was a bachelor, and his only surviving family was his brother, Blake Kilburn, and Blake's children. Peter Kilburn, at the time of his death, was a domiciliary of the State of California. He was born in California, lived there for many years before he accepted a job in Lebanon, and was buried there after his murder.

5.  Blake Kilburn was a citizen of the United States and was the younger brother of Peter Kilburn, who was killed by terrorists from a gunshot wound to the head after having been kidnapped and held hostage in Lebanon under inhumane conditions for approximately sixteen months. At the time of his death in January 2006, Blake Kilburn was a domiciliary of the State of Oregon, having resided there for several years prior to his death.

6.  Pursuant to 28 U.S.C. §§ 1605A(a), 1605A(c) and 1605A(h)(1), (2), and (7), Peter Kilburn was a victim of (1) "hostage taking" as defined in Article 1 of the International Convention Against the Taking of Hostages; (2) "torture" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note); and (3) "extrajudicial killing" as defined in section 3 of the Torture Victims Protection Act of 1991 (28 U.S.C. § 1350 note). Blake Kilburn and Peter Kilburn both suffered "personal injury" as a result of Defendants' actions and activities as referenced in 28 U.S.C. § 1605A.

7.  Defendant, the Islamic Republic of Iran, is a foreign state that since January 1984 has been designated a state sponsor of terrorism, pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371. The Islamic Republic of Iran provides material support and resources to Islamic Jihad (also known as "Hizbollah" and referred to hereinafter as


"Hizbollah"), a politico-paramilitary terrorist organization operating in Lebanon. The Islamic Republic of Iran sponsors Hizbollah, within the meaning of 28 U.S.C. § 1605A and 28 U.S.C. § 1605 note, by providing it with funding, direction, and training for its terrorist activities in Lebanon.

8. Defendant, MOIS is the Iranian intelligence service and functions both within and beyond Iranian territory. MOIS, acting as an agent of the Islamic Republic of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A and 28 U.S.C. § 1605 note, which caused Peter Kilburn to be abducted, tortured, held as a hostage for sixteen months in Lebanon and sold to a terrorist organization funded by Libya to be murdered. Specifically, MOIS acted as a conduit for the Islamic Republic of Iran's provision of funds, training, and direction to Hizbollah for its terrorist activities in Lebanon, including the actions relating to Peter Kilburn's kidnapping, captivity and sale to a terrorist organization with ties to Libya.

9. Although Libya and LESO have "joined issue" in this case and filed an Answer on November 4, 2004 (*See* Docket entry 31), Iran and MOIS have chosen not to participate in this case despite having been served properly with a summons and complaint. Consequently default has been entered against Iran and MOIS. (*See* Docket entry 38 dated March 2, 2005).

10. This Court, in several separate cases, has held that the Islamic Republic of Iran is liable to victims of state-sponsored terrorism, particularly terrorist acts committed in Lebanon, Israel, and Gaza. *See Flatow v. The Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998); *Cicippio v. The Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998); *Anderson v. The Islamic Republic of Iran*, 90 F. Supp. 2d 107 (D.D.C. 2000); *Sutherland v. The Islamic Republic*

*of Iran*, 151 F. Supp. 2d 27 (D.D.C. 2001); *Stethem v. The Islamic Republic of Iran*, 201 F. Supp. 2d 78 (D.D.C. 2002); *Kerr v. The Islamic Republic of Iran*, 245 F. Supp. 2d 59 (D.D.C. 2003).

11.     Defendant Libya, is a foreign sovereign that was designated as a state sponsor of terrorism from 1979 to 2006, pursuant to section 6(j) of the Export Administration Act of 1979, 50 U.S.C. § 2405(j), and section 620A of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371. During the relevant time period of the events alleged in this Complaint, Libya provided material support and resources to Arab Revolutionary Cells, a politico-paramilitary terrorist organization operating in Lebanon that has been linked to Hizbollah and/or the Libyan-backed terrorist organization Abu Nidal, a terrorist organization that has carried out acts of terrorism over thirty years throughout the world and with backing from Libya among other sources.  At all times relevant to the events alleged in this Complaint, Libya sponsored Arab Revolutionary Cells, within the meaning of 28 U.S.C. § 1605A and 28 U.S.C. § 1605 note, by providing it with funding, direction, and training for its terrorist activities in Lebanon.

12.     Defendant, the LESO is a Libyan intelligence service that functions both within and beyond Libyan territory.  Upon information and belief, LESO, acting as an agent of Libya, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A and 28 U.S.C. § 1605 note, which caused Peter Kilburn to be purchased from his kidnappers, held captive, tortured and extrajudicially killed by a terrorist organization with funded by Libya. Specifically, LESO acted as a conduit for Libya's provision of funds, training, and direction to Arab Revolutionary Cells for its terrorist activities in Lebanon, including the actions relating to Peter Kilburn's sale and murder.

13.     As with Iran, this Court has held that Libya is liable to victims of state-sponsored terrorism, pursuant to 28 U.S.C.A. § 1605(a)(7), the predecessor to 28 U.S.C. § 1605A.  *See*

*Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216 (D.D.C. 2008) (finding Libya liable for the 1989 terrorist bombing of UTA Flight 772); *Price v. Socialist People's Libyan Arab Jamahiriya,* 384 F. Supp. 2d 120 (D.D.C. 2005) (finding Libya liable for holding hostage and torturing plaintiffs); *see also Rein v. Socialist People's Libyan Arab Jamahiriya,* 162 F.3d 748 (2d Cir. 1998) (upholding denial of Libya's motion to dismiss for lack of personal jurisdiction, subject matter jurisdiction and failure to state a claim in case brought by families of the victims of the bombing of Pan Am Flight 103 over Lockerbie, Scotland).

## ALLEGATIONS OF FACT

14. On information and belief, on or about November 30, 1984, Peter Kilburn was abducted from his Beirut, Lebanon apartment. At the time of his abduction, Peter Kilburn was a librarian and instructor of library sciences at the American University of Beirut and had been living in Lebanon for approximately twenty years. During December 1984, Hizbollah claimed responsibility for Mr. Kilburn's kidnapping.

15. On information and belief, Peter Kilburn was held captive in solitary confinement under brutal and inhumane conditions until the Spring of 1986. These conditions included being forced to wear a blindfold at all times, being constantly shackled to a wall or floor, being beaten or threatened with beatings, being confined to a small cell with no opportunity to exercise, being fed a monotonous and unhealthy died, and being limited to one brief toilet visit per day, regardless of any need to go more often. He also had inadequate medical care.

16. In the spring of 1986, Blake Kilburn's family was informed by Colonel Oliver North that the United States was close to reaching an agreement with Peter Kilburn's captors for his release. According to later Congressional testimony, Colonel North had orchestrated an elaborate plan to ransom Peter Kilburn with specially-treated United States currency that would

disintegrate within hours of Peter's release. Colonel North's plan was never carried out because the United States bombed Tripoli, Libya on April 14, 1986, in retaliation for the Libyan-sponsored bombing of a Berlin, West Germany nightclub that killed United States servicemen. On April 17, 1986, Peter Kilburn was found dead.

17.     Sometime between April 14, 1986 and April 17, 1986, Hizbollah sold Peter Kilburn to members of the Libyan-sponsored Arab Revolutionary Cells for approximately $3,000,000. After the bombing of Tripoli, Libyan agents in Lebanon made it known that they wanted to purchase an American hostage to murder in retaliation for the bombing.

18.     On or about April 17, 1986, Peter Kilburn was murdered by members of Arab Revolutionary Cells. He was shot in the back of the head and his body was left on the side of a road near Beirut along with the bodies of two other murder victims, British citizens and hostages Leigh Douglas and Philip Padfield. In a note found near the bodies, the Libyan-sponsored group Arab Revolutionary Cells claimed responsibility for the murders.

19.     At the time that Peter Kilburn was abducted, he suffered from heart disease, hypertension and other ailments, which required medications and medical attention. Prior to the abduction, he had suffered a stroke that left him partially paralyzed. He walked with a stoop and required a cane.

20.     For the entire sixteen months of Peter Kilburn's captivity, his family received no information regarding his whereabouts or his condition. His family could not get news or letters to Peter. Some time after Peter Kilburn's murder, the Federal Bureau of Investigation ("FBI") gave Blake Kilburn a short, hand-scribbled note, reportedly from Peter Kilburn, that the FBI had intercepted during Peter's captivity. Peter regularly corresponded with friends and family prior to the abduction. However, the letter intercepted by the FBI was the only correspondence

received from Peter Kilburn after he was abducted. According to Blake Kilburn, the letter did not read like something his brother would write. The lack of contact or information regarding Peter's whereabouts and condition caused Blake Kilburn and his family severe mental anguish, depression, anxiety, and pain and suffering.

21. On information and belief, Peter Kilburn suffered and endured severe physical discomfort and injury, deterioration of his medical condition, mental anguish, depression, humiliation, anxiety, and pain and suffering. On information and belief, he was also both the victim of and the witness to psychological torture before, during and after the events that led to his sale to Arab Revolutionary Cells and to his murder alongside Leigh Douglas and Philip Padfield.

22. Blake Kilburn and his family likewise were caused to endure severe mental anguish depression, humiliation, anxiety, and pain and suffering as a result of his brother's kidnapping, captivity, sale and murder. These emotions were heightened because Blake and his family had been led to believe that Peter's release was imminent.

23. Blake Kilburn and his family were denied Peter's companionship during the sixteen months of Peter's captivity. They were permanently denied Peter's companionship as a result of Peter's murder at the hands of Arab Revolutionary Cells.

24. On information and belief, Peter Kilburn's kidnappers, who kept him in captivity for sixteen months and then sold him to be murdered, were members of Hizbollah, a politico-paramilitary group responsible for carrying out acts of terrorism in Lebanon. *See Anderson*, 90 F. Supp. 2d at 109, n.1; *Cicippio*, 18 F. Supp. 2d at 64.

25. On information and belief, Peter Kilburn was purchased and killed by members of the Arab Revolutionary Cells, a politico-paramilitary group based in Lebanon and associated

with Hizbollah and Abu Nidal, a terrorist organization that has carried out acts of terrorism over thirty years throughout the world and with backing from, among other sources, Libya. On information and belief, Arab Revolutionary Cells maintains a significant presence in Lebanon.

26. At all relevant times, Iran, through its agent MOIS, provided material resources and support, in the form of funding, training, and direction, to Hizbollah. In providing said material resources and support, MOIS was acting within the scope of its agency.

27. At all relevant times, Libya, through its agent LESO, provided material resources and support, in the form of funding and direction, to Arab Revolutionary Cells. In providing said material resources and support, LESO was acting within the scope of its agency.

## CAUSE OF ACTION

28. On January 28, 2008, President Bush signed into law the National Defense Authorization Act for Fiscal Year 2008, Public Law 110-181 (2008). Section 1083 of the Act amends 28 U.S.C. § 1605 in several respects. Among other things newly enacted 28 U.S.C. § 1605A(c) creates a federal private right of action for certain individuals to sue foreign state sponsors of terrorism.

29. In planning and carrying out of the kidnapping and murder of Peter Kilburn in violation of 28 U.S.C. § 1605A(c), Defendants the Islamic Republic of Iran and the Socialist People's Libyan Arab Jamahiriya were state sponsors of terrorism as described in 28 U.S.C. § 1605A(a)(2)(A)(i) and Defendants the Iranian Ministry of Information and Security and the Libyan External Security Organization were acting within the scope of their office, employment or agency in committing the acts alleged herein.

30. Pursuant to 28 U.S.C. § 1605A(c), Defendants Iran and Libya are vicariously liable for the acts of its officials, employees, and/or agents.

31. As a direct and proximate result of the willful, wrongful, intentional and reckless acts of the Defendants, Plaintiffs suffered death and/or personal injury. Pursuant to 28 U.S.C. § 1605A(c), Plaintiffs assert a federal cause of action against Defendants for the various events and counts set forth in this First Amended Complaint. In addition to that provision, and/or in the alternative, Plaintiffs assert a cause of action pursuant to the laws of California and Oregon.

## COUNT I

## WRONGFUL DEATH

32. Paragraphs 1 through 31 are incorporated herein as fully set forth.

33. As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Peter Kilburn was sold to terrorists whom Hizbollah knew or should have known intended to kill him.

34. As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Peter Kilburn was murdered.

35. As a direct and proximate result of these acts, Plaintiffs have been injured.

WHEREFORE, Plaintiffs demand that judgment be entered, jointly and severally, against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya and the Libyan External Security Organization, in the amount of SIXTY MILLION DOLLARS ($60,000,000.00).

## COUNT II

## BATTERY

36. Paragraphs 1 through 35 are incorporated herein as if fully set forth.

37.     On or about November 30, 1984, members of the Hizbollah willfully, violently, and forcefully seized and abducted Peter Kilburn against his will in Beirut, Lebanon.

38.     The willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, constituted a battery upon the person of Peter Kilburn.

39.     Some time between April 14, 1986 and April 17, 1986, members of the Arab Revolutionary Cells, after purchasing Peter Kilburn from members of Hizbollah, willfully, violently, and forcefully seized and abducted Peter Kilburn against his will.

40.     The willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, constituted a battery upon the person of Peter Kilburn.

41.     As a direct and proximate result of these acts, Plaintiff was injured.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT III

## ASSAULT

42.     Paragraphs 1 through 41 are incorporated herein as if fully set forth.

43.     On information and belief, during the time Peter Kilburn was held in captivity by Hizbollah members, Peter Kilburn was put in constant fear and apprehension of harm from his captors.  On information and belief, during his captivity Peter Kilburn was in constant fear and apprehension of harm resulting from deprivation of much needed medical attention.   On

information and belief he also was in fear and apprehension because of the psychological abuse inflicted by his captors during the sixteen months of his captivity.

44. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Kilburn was injured in that he endured extreme mental anguish, physical injury, and pain and suffering.

45. On information and belief, from the time of Peter Kilburn's sale to members of Arab Revolutionary Cells until the moment they killed him, Kilburn was put in constant fear and apprehension of harm and eventual murder by his captors. On information and belief, during his captivity by the members of the Arab Revolutionary Cells, Peter Kilburn was in constant fear and apprehension of harm resulting from deprivation of much needed medical attention. On information and belief Peter Kilburn also was in fear and apprehension because of the psychological abuse inflicted by his captors.

46. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Kilburn was injured in that he endured extreme mental anguish, physical injury, and pain and suffering.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT IV

## FALSE IMPRISONMENT

47. Paragraphs 1 through 46 are incorporated herein as if fully set forth.

48. During the sixteen months that Peter Kilburn was held in captivity by Hizbollah members, he was deprived of his liberty and had no means of escape.

49. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Kilburn was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, was deprived of his livelihood, suffered the loss of the company of his family and friends, and was subjected to physical injury, discomfort, and inconvenience.

50. During the period of time that Peter Kilburn was held in captivity by Arab Revolutionary Cells members prior to being killed by his captors, he was deprived of his liberty and had no means of escape.

51. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Kilburn was injured in that he endured extreme mental anguish, physical injury, and pain and suffering, was deprived of his livelihood, suffered the loss of the company of his family and friends, and was subjected to physical injury, discomfort, and inconvenience.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the

Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT V

## TRAFFICKING IN SLAVES

52. Paragraphs 1 through 51 are incorporated herein as if fully set forth.

53. On information and belief, on or about April 14, 1986, members of Arab Revolutionary Cells bought and members of Hizbollah sold Peter Kilburn for a profit equivalent to three million United States dollars.

54. During the entire sixteen months of Peter Kilburn's captivity by members of Hizbollah, Hizbollah had absolute power over the life, fortune and liberty of Peter Kilburn.

55. From the time Peter Kilburn was purchased by members of Arab Revolutionary Cells on April 14, 1986 until the moment they killed him on April 17, 1986, Arab Revolutionary Cells had absolute power over the life, fortune and liberty of Peter Kilburn.

56. The willful, wrongful, intentional, and reckless sale of Peter Kilburn for profit by Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, constituted trafficking in slaves in violation of the law of nations.

57. The willful, wrongful, intentional, and reckless purchase of Peter Kilburn into a condition of slavery by Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, constituted trafficking in slaves in violation of the law of nations.

58. As a direct and proximate result of these acts, Plaintiff was injured.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the

Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of FIFTY MILLION DOLLARS ($50,000,000.00).

## COUNT VI

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Paragraphs 1 through 58 are incorporated herein as if fully set forth.

60. The acts of abducting and holding Peter Kilburn hostage for sixteen months and then selling him to be killed constituted extreme and outrageous conduct on the part of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS.

61. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Plaintiffs were caused to suffer severe emotional distress.

62. The acts of purchasing Peter Kilburn for the purpose of killing him, holding him hostage, killing him, and leaving his body on the side of a road in Lebanon constituted extreme and outrageous conduct on the part of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO.

63. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Plaintiffs were caused to suffer severe emotional distress.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT VII

## LOSS OF SOLATIUM

64. Paragraphs 1 through 63 are incorporated herein as if fully set forth.

65. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agent MOIS, Blake Kilburn suffered extreme mental anguish, emotional pain and suffering, and loss of the society and companionship of his brother, Peter Kilburn, during Peter's captivity. Peter Kilburn similarly suffered from the deprivation of his brother's companionship.

66. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Blake Kilburn suffered extreme mental anguish, emotional pain and suffering, and the permanent loss of the society and companionship of his brother, Peter Kilburn. Peter Kilburn similarly suffered from the deprivation of his family's companionship.

WHEREFORE, Plaintiffs demand that judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TEN MILLION DOLLARS $10,000,000.00).

## COUNT VIII

## ECONOMIC DAMAGES

67. Paragraphs 1 through 66 are incorporated herein as if fully set forth.

68. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hizbollah members, whose acts were funded and directed by the Islamic Republic of Iran

through its agent MOIS, Plaintiffs incurred economic damages through deprivation of Peter Kilburn's income while he was held hostage.

69. As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Arab Revolutionary Cells members, whose acts were funded and directed by Libya through its agent LESO, Plaintiffs incurred economic damages through deprivation of Peter Kilburn's income as a result of his wrongful death.

WHEREFORE, Plaintiffs demand judgment be entered jointly and severally against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in the amount of TEN MILLION DOLLARS ($10,000,000.00).

## COUNT IX

## PUNITIVE DAMAGES

70. Paragraphs 1 through 69 are incorporated herein as if fully set forth.

71. The Islamic Republic of Iran provided material support and resources to Hizbollah by providing it with funding, direction, and training for its terrorist activities in Lebanon.

72. Pursuant to 28 U.S.C. § 1605A(c), which specifically authorizes a cause of action for punitive damages in civil actions for money damages resulting from terrorist acts, Iran is liable for punitive damages.

73. The actions of the Hizbollah members who kidnapped and held Peter Kilburn hostage for sixteen months under brutal and inhumane conditions and then sold him to his would-be killers were intentional and malicious and in willful, wanton, and reckless disregard of Kilburn's rights.

74. MOIS provided funding, direction, and training for Hizbollah's terrorist activities and are therefore vicariously liable for the actions of the Hizbollah members. In providing such funding, direction, and training, MOIS was acting within the scope of its agency with the Islamic Republic of Iran. And pursuant to 28 U.S.C. § 1605A(c), Iran is vicariously liable for the acts of MOIS.

75. Pursuant to 28 U.S.C. § 1605A and section 589 of the 1997 Omnibus Consolidated Appropriations Act, P.L. 104-208, Div. A, Title 1 § 101 (September 30, 1996), 110 Stat. 3009-172, reprinted at 28 U.S.C. § 1605 note, which specifically authorizes a cause of action for punitive damages in civil actions for money damages resulting from terrorist acts, MOIS is liable for punitive damages.

76. The actions of the Arab Revolutionary Cells members who bought Peter Kilburn from Hizbollah members, held him captive under brutal and inhumane conditions, and then murdered him were intentional and malicious and in willful, wanton, and reckless disregard of Kilburn's rights.

77. The Socialist People's Libyan Arab Jamahiriya provided material support and resources, within the meaning of 28 U.S.C. § 1605A(c) and 28 U.S.C. § 1605 note, to Arab Revolutionary Cells and/or the Libyan-backed terrorist organization Abu Nidal by providing them with funding, direction, and training for their terrorist activities in Lebanon.

78. Pursuant to 28 U.S.C. § 1605A(c), which specifically authorizes punitive damages in civil actions resulting from terrorist acts, Libya is liable for punitive damages.

79. LESO provided funding, direction, and training for Arab Revolutionary Cell's terrorist activities and is therefore vicariously liable for the actions of the Arab Revolutionary Cells members. In providing such funding, direction, and training, LESO was acting within the

scope of its agency with Libya.  And pursuant to 28 U.S.C. § 1605A(c), Libya is vicariously liable for the acts of LESO.

80.     Pursuant to 28 U.S.C. § 1605A(c) and section 589 of the 1997 Omnibus Consolidated Appropriations Act, P.L. 104-208, Div. A, Title 1 § 101 (September 30, 1996), 110 Stat. 3009-172, reprinted at 28 U.S.C. § 1605 note, which specifically authorize punitive damages in civil actions resulting from terrorist acts, LESO is liable for punitive damages.

WHEREFORE, Plaintiffs demand that judgment be entered against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in an appropriate amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grant Plaintiffs judgment in their favor and against Defendants on Counts I through IX, and grant Plaintiffs:

A.     Compensatory damages against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization, jointly and severally, in the amount of TWO HUNDRED AND SIXTY MILLION DOLLARS ($260,000,000.00);

B.     Punitive damages against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Socialist People's Libyan Arab Jamahiriya, and the Libyan External Security Organization in an appropriate amount to be determined at trial;

C.     Prejudgment interest;

D.     Reasonable costs and expenses;

E.     Reasonable attorneys' fees; and

F.   Such other and further relief which the Court may determine to be just and equitable under the circumstances.

Dated: March 20, 2008                              Respectfully submitted,

_____/s/_____
Stuart H. Newberger, DC BAR #294793
Michael L. Martinez, DC BAR #347310
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500
Counsel for Plaintiffs